UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OFOSUAH QUAYNOR,

       Plaintiff,                                 Civil Action No. 14-12258
                                                Honorable Gershwin A. Drain
v.                                                    Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]**

Plaintiff Ofosuah Quaynor ("Quaynor") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of defendant Commissioner of Social Security ("Commissioner") that she was overpaid Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Quaynor was overpaid DIB in the amount of $46,455.10, and that she did not qualify for a waiver of the overpayment. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [14] be GRANTED, Quaynor's motion for summary judgment [12] be DENIED and, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Background and Procedural History

Quaynor began receiving disability insurance benefits on November 12, 2001. On August 4, 2010, the Social Security Administration ("SSA") informed Quaynor that it had overpaid DIB to her for the months of October 2006 and from "February 2007 and continuing." (Tr. 99). The notice explained that SSA intended to issue a decision that she was no longer eligible to receive DIB as of May 2007 because she had engaged in "substantial work."[1] (Tr. 99-100). *See* 20 C.F.R. § 404.1574(b)(2) (establishing guidelines for calculating substantial gainful activity). SSA afforded Quaynor 10 days to respond to the notice before rendering a decision as to her DIB eligibility status. (Tr. 99,101). However, Quaynor did not submit a response.

On August 16, 2010, SSA notified Quaynor that, "[a]fter reviewing your record we found that your work for October 2006 and from February 2007 through April 2007 was substantial and gainful. Therefore, we suspended your benefits for October 2006 and from February 2007 through April 2007. Because you received benefits for the periods mentioned above and from May 2007 through July 2010 you are overpaid." (Tr. 91). SSA determined that it had overpaid Quaynor a total of $46,455.10 and requested that she refund the overpayment within 30 days. (*Id.*). The notice further advised Quaynor of her right to: (1) appeal the determination of overpayment; or (2) request a waiver. (Tr. 92). In order to obtain a waiver of the overpayment, SSA informed Quaynor that she would have to demonstrate: "(a) The overpayment was not your fault; and (b) You could not meet your necessary living expenses if we recovered the overpayment, or recovery would be unfair for some other reason." (*Id.*). In addition, she would have to provide a statement of her assets, monthly income, and expenses. (*Id.*).

---

[1] The notice provides that Quaynor was no longer eligible to receive DIB as of May 2006, but this appears to have been an error. (Tr. 91 [stating that DIB eligibility terminated May 2007]).

2

Quaynor opted to pursue a waiver of the overpayment and filed her waiver request on September 9, 2010. (Tr. 83-90). Quaynor checked the box on the waiver request form marked "[t]he overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons." (Tr. 83). Quaynor stated that she had used the overpaid benefits to "take care of my basic needs and pay off my medical debts, maintain my 1998 Saturn [vehicle] so that I could work when I could and pay my medical bills." (Tr. 84). According to Quaynor, she "was under the impression that I got credit for paying off my medical debts. I didn't realize I needed to send copies in regularly." (*Id.*). In explaining why she believed she should not have to refund the overpayment, Quaynor indicated that, "[i]t would penalize me for my efforts to pay-off my medical debts." (Tr. 85). She also reported that her monthly income amounted to $1,221 and that her adjusted monthly expenses totaled $1,104, resulting in a surplus of only $117. (Tr. 89).

On September 11, 2010, an SSA claims representative recommended that Quaynor's waiver request be denied because her trial work period[2] ended in April 2004 and she performed substantial gainful activity in 2004, 2006, 2007, and 2008. (Tr. 81). The claims representative noted that the "overpayment was caused by a DIB cessation over a long period of time." (*Id.*). With respect to whether she was at fault for the overpayment, the claims representative believed that Quaynor:

> understood full the trial work period and the concept of DIB cessation. If

---

[2] "A 'trial work period' is a period of time during which an individual who has been found disabled may test his or her ability to work and still be considered disabled. 20 C.F.R. § 404.1592(a). The period consists of performance of 'services' during nine months, which do not need to be consecutive months, but which must occur within a period of sixty consecutive months. *Id.* § 404.1592(a), (e)." *Smith v. Soc. Sec. Admin.*, 538 F. App'x 484, 486 n.1 (5th Cir. 2013); *see also Allen v. Apfel*, 3 F. App'x 254, 258 (6th Cir. 2001) ("[T]he trial work period provided for in [20 C.F.R.] § 404.1592 was designed to permit a claimant, already determined to be disabled, to test his ability to work and still be considered disabled.").

> she did not understand it then she would not have known to ask for IRWE [impairment-related work expenses] considerations. During the time that she was overpaid, she [worked for a temporary placement agency]. This means that on top of everything else she had control of when she chose to work. If she was over SGA [substantial gainful activity] she could simply refuse the offer of work and could have remained under SGA.

(Tr. 82). The claims representative further opined that Quaynor should refund the overpayment because her resumed monthly DIB exceeded her monthly expenses by $117. (*Id.*).

On September 16, 2010, SSA informed Quaynor of her right to a personal conference with a claims representative in order to discuss the disposition of her waiver request. (Tr. 78-79). In a waiver determination dated October 28, 2010, the claims representative who conducted the personal conference reported that Quaynor:

> brought in a large amount of receipts for medical bills, supplements, and medication expenses. Much of this was past due bills – some credit card payments which cannot be deducted on a monthly basis unless it is a current expense and needed for her to work. We processed a reconsideration on the work determination using her receipts but it was still not enough to put her under SGA.

(Tr. 76). The claims representative concluded:

> The work determination decision stands. The personal conference decision is to deny this waiver due to the fact that she knowingly worked and earned SGA while receiving benefits. She is still attempting to work and earn SGA despite the explanation and her large overpayment amount. She is at fault for this overpayment and therefore it cannot be waived.

(*Id.*).

On October 28, 2010, SSA notified Quaynor that it would not waive recovery of the overpayment because she was at fault for the overpayment and the recovery of the overpayment would not render her unable to pay for necessary expenses, or otherwise be unfair. (Tr. 73).

Thereafter, Quaynor filed a timely request for an administrative hearing, which was held on June 29, 2011, before ALJ Ramona Fernandez. (Tr. 40, 246-79). Quaynor appeared at the

4

hearing without an attorney or other representative. During the hearing, Quaynor testified that she misunderstood the income reporting requirements that were necessary to determine whether she should have continued to receive DIB. (Tr. 255). Quaynor acknowledged that she never reported the income that she earned over a four-year period while working for a temporary placement agency. (Tr. 256-59). She indicated that, beginning in 2005, she had filed medical expense receipts with SSA to verify her impairment-related work expenses. (Tr. 259). Quaynor responded affirmatively to the ALJ's inquiry as to whether she understood "that there's [an income] cutoff point at which you are no longer entitled to benefits . . ." (Tr. 263). And she indicated that she could still meet all of her monthly expenses notwithstanding that SSA began deducting $100 from her monthly DIB in March 2011. (Tr. 264, 277).

On July 25, 2011, the ALJ issued a written decision denying Quaynor's request to waive recovery of the overpayment.[3] (Tr. 14-15). The ALJ concluded that: (1) SSA overpaid DIB to Quaynor in the amount of $46,455.10 during the period of October 2006 and from February 1, 2007 through July 1, 2010; (2) Quaynor was at fault for the overpayment; and (3) recovery of the overpayment did not defeat the purpose of the Act, or violate principles of equity or good conscience. (Tr. 13-14). The Appeals Council denied review on April 11, 2014. (Tr. 3-6). Quaynor filed for judicial review of the final decision on June 6, 2014, and both parties have filed motions for summary judgment. (Doc. #1, #12, #14). The central issued raised in the parties' motions is whether Quaynor is entitled to a waiver of the overpayment.

### B. Framework for Determining Waiver of Recovery of DIB Overpayments

Under the Act, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made under this subchapter, proper adjustment or

---

[3] The ALJ reduced the DIB overpayment amount by $400 to account for the monthly deductions from Quaynor's resumed DIB that had begun in March 2011. (Tr. 13).

5

recovery shall be made, under regulations prescribed by the Commissioner of Social Security." 42 U.S.C. § 404(a)(1). 42 U.S.C. § 404(b) provides an exception to this rule of recovery for "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." Thus, in order to obtain a waiver of repayment, a claimant must establish that he is both: (1) "without fault"; and (2) that "such adjustment or recovery would defeat the purpose of [the Act] or would be against equity and good conscience." *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) (quoting 42 U.S.C. § 404(b)).

> A claimant is considered to be at fault if the overpayment resulted from:
>
> > (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> >
> > (b) Failure to furnish information which he knew or should have known to be material; or
> >
> > (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507; *see also Watson v. Sullivan*, 940 F.2d 168, 171 n.5 (6th Cir. 1991) (the burden in such cases is preponderance of the evidence). In evaluating the above factors, the Commissioner considers "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language)." *Id.* An ALJ's determination that a claimant is at fault for an overpayment does not require a separate finding of bad faith. Rather, the overpayment "can be the result of an honest mistake." *Hassett v. Comm'r of Soc. Sec.*, No. 12-419, 2013 U.S. Dist. LEXIS 103521, at *9 (W.D. Mich. Jul. 3, 2013) (citing *Morgan v. Finch*, 423 F.2d 551, 553 (6th Cir. 1970)).

Even if a claimant is found to have acted without fault, he must still establish that

6

recovery of an overpayment "would defeat the purpose of [the Act] or would be against equity and good conscience." *Valley*, 427 F.3d at 391. The purpose of the Act would be defeated where the recovery of an overpayment would "deprive a person of income required for ordinary and necessary living expenses," 20 C.F.R. § 404.508(a). This occurs "in . . . situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b).

"Recovery of an overpayment is against equity and good conscience [under the Act] if an individual . . . [c]hanged his or her position for the worse. . . or relinquished a valuable right. . . because of reliance upon a notice that a payment would be made or because of the overpayment itself . . ." 20 C.F.R. § 404.509(a)(1). Additionally, "recovery of an overpayment is against equity and good conscience where the individual 'accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto . . .'" *Valley*, 427 F.3d at 392-93 (citing 20 C.F.R. §§ 404.510a, 404.512). Whether the recovery of an overpayment is contrary to "equity and good conscience" is not dependent upon the "individual's financial circumstances." 20 C.F.R. § 404.509(b).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

With respect to waiving the recovery of an overpayment, "[t]he question of fault is one of fact and as such is subject to the substantial evidence standard of review." *Doan v. Sec'y of Health and Human Services*, No. 86-5956, 1987 U.S. App. LEXIS 8723, at *2 (6th Cir. Jul. 7, 1987). Substantial evidence must also support the Commissioner's finding that recovery of an overpayment would not defeat the purpose of the Act or be against equity and good conscience. *See Farnham v. Sec'y of Health and Human Services*, No. 85-5123, 1985 U.S. App. LEXIS 13730, at *10 (6th Cir. Dec. 27, 1985). When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Quaynor v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision

every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.     Analysis

Quaynor argues that she was not at fault for the DIB overpayment because: (1) she did not understand that she had to report her monthly earnings and monthly impairment-related work expenses to the SSA as a part of the "Ticket-To-Work Program"[4] (Doc. #12 at 2); (2) anxiety, side effects from medication, a "moderately severe traumatic brain injury residual," and "some form of laziness" may have prevented her from seeking clarification about the SSA's earnings reporting requirements (*Id.* at 3); and (3) she used the overpayment to pay for medical expenses and automobile repairs "that enable her to work towards eventually going off the disability rolls." (*Id.* at 1).

Quaynor further maintains that the purposes of the Act would be defeated if the Court orders her to refund the overpayment because she needs substantially all of her current income (including social security monthly benefits) to meet current ordinary and necessary living expenses. (*Id.* at 4). She objects on the same legal basis to the ALJ's determination that her gym membership fee was not a necessary expense. (*Id.* at 3). Additionally, Quaynor contends that recovery of the overpayment is against equity and good conscience because of the increasing

---

[4] Quaynor alleges that she was participating in the "Ticket-to-Work Program" throughout most, if not all, of the time she has been receiving DIB. The program, subject to certain restrictions and limitations, "allows disabled individuals receiving social security benefits to work while continuing to receive their benefits." *Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 568 (7th Cir. 2011); *see also* 42 U.S.C. § 1320b-19; 20 C.F.R. §§ 411.100-411.730.

severity of her Lupus condition. (*Id.* at 4).  The Court will address these arguments in turn.

### 1. Substantial Evidence Supports the ALJ's Decision that Quaynor was At Fault for the Overpayment

As stated above, under Social Security regulations, Quaynor is deemed to be at fault for a DIB overpayment if she failed "to furnish information which [she] knew or should have known to be material . . ." 20 C.F.R. § 404.507(b).  After reviewing the entire record in light of this standard, the Court finds that the ALJ appropriately determined that Quaynor was at fault for the DIB overpayment.

At the hearing, Quaynor testified that she failed to comprehend SSA's income reporting requirements. (Tr. 255).  The ALJ cited numerous good reasons for rejecting this argument, including that "[Quaynor] has a bachelor's degree and has submitted a complete and concise brief…demonstrating that she does not have any mental limitations and is intellectually very capable of understanding her duty to report earnings…Moreover, she has testified that [she] understood the concept of IRWE [impairment-related work expenses] in 2005, and submitted receipts, but did not continue to properly 'align her expenses with her work activity' [which] confirms her understanding of the requirement to report earnings and her lack of effort to comply with that requirement…"  (Tr. 13-14).

Delving deeper into Quaynor's testimony further belies her argument.  Specifically, Quaynor testified that she "didn't even know what report earnings really meant."  (Tr. 255).  In other words, Quaynor admitted being notified of an obligation to "report [her] earnings" during the relevant period, but simply claims she did not understand what that obligation "really meant." Quaynor also testified that she understood that her obligation to file medical expense receipts with SSA to verify her impairment-related work expenses (Tr. 259), that her DIB eligibility depended upon the amount of her monthly income, that "there's a cutoff point at which you are

no longer entitled to benefits," and that she understood "that level." (Tr. 263, 265). Despite all of this, Quaynor acknowledged that she had not reported the income that she earned over a four-year period (Tr. 256-59), and in her summary judgment brief, she concedes that she never attempted to contact SSA to obtain clarification of their income reporting requirements. (Doc. #12 at 2). Furthermore, the fact that Quaynor spent the overpaid DIB on medical expenses and regular car maintenance, while admirable, has no bearing on whether she was at fault for the overpayment. *See* 20 C.F.R. § 404.507.[5]

In sum, while Quaynor's assertion that she had no "criminal intent" (Tr. 261) may well be true, that is not the salient consideration. Rather, what is determinative here is that, in light of the foregoing, the ALJ's conclusion that Quaynor was at fault in causing the overpayment is supported by substantial evidence. *Hassett*, 2013 U.S. Dist. LEXIS 103521, at *9; *Morgan*, 423 F.2d at 553.

Insofar as Quaynor asserts that she did not understand SSA's income reporting requirements on account of "moderately severe traumatic brain injury residual" and other health-related issues, the ALJ properly found that this contention lacks merit. (Tr. 13). Although Quaynor proffered the results of a May 7, 2011 EEG, which "suggested a moderately severe

---

[5] To the extent Quaynor is challenging that the alleged overpayment was not properly reduced by certain medical expenses she had been paying off during the relevant period of time, the ALJ properly considered and rejected that argument. (Tr. 13). The Waiver Determination form specifically indicates that "During the personal conference [Quaynor] brought in a large amount of receipts for medical bills, supplements, and medication expenses. Much of this was past due bills … which cannot be deducted [] unless it is current expense and needed for her to work. We processed a reconsideration on the work determination using her receipts but it was still not enough to put her under SGA." (Tr. 76; *see also* Tr. 81). Quaynor has failed to provide evidence to the contrary. Indeed, she admits that the payments she made during the relevant period were for past due medical debts (Tr. 84 ("I was under the impression that I got credit for paying off my medical debts.")) which are not deductible from earnings in determining whether the SGA threshold has been exceeded, as opposed to impairment-related work expenses, which are so deducted. *See* 20 C.F.R. 404.1576(b) (noting that an expense may be deducted only if it is incurred during the relevant period "in order [for the claimant] to work".).

residual from [a] closed head injury," it is unclear whether she suffered that injury at some point before, during, or after she incurred the overpayment. (Tr. 213). Moreover, the physician who conducted the EEG opined that the impression of the test was "within normal limits," and as Quaynor herself stated, "[o]ver the years [I have] completed work activity reports (SSA-821-BK) and disability reviews (SSA-454-BK) requests from DDS without difficulty." (Doc. #12 at 1).[6]

In sum, substantial evidence supports the ALJ's finding that Quaynor was at fault in causing the overpayment, and that Quaynor is therefore not entitled to a waiver of the overpayment. Accordingly, the ALJ's decision should be affirmed.[7]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [14] be GRANTED, Quaynor's motion for summary judgment [12] be DENIED, and the Commissioner's decision be AFFIRMED.

Dated: December 9, 2015　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[6] As the ALJ properly found, Quaynor's alleged cognitive deficiencies are further belied by her ability to adequately represent herself during the June 29, 2011 hearing and throughout this matter. (Tr. 269-77).

[7] In light of its determination that the ALJ properly found Quaynor is not without fault as to the overpayment, the Court need not evaluate whether the recovery of the overpayment would defeat the purposes of the Act or be against equity and good conscience. *See Hassett v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 103521, at *9 (citing *Morgan*, 423 F.2d at 553) ("If there is substantial evidence to support a finding that the plaintiff is 'not without fault,' then the court does not need to determine whether recovery would be against equity and good conscience or would defeat the purposes of the Act ").

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 9, 2015.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager